```
                  UNITED STATES DISTRICT COURT
                    DISTRICT OF NORTH DAKOTA
                      NORTHWESTERN DIVISION

Superior Grains, Inc.,           )
                                 )
              Plaintiff,         )
                                 )         Case No. 4:07-mc-11
    v.                           )
                                 )
Palouse Empire Marketing, Inc.,  )
                                 )
              Defendant.         )
```

## Memorandum Opinion and Order

In January 2007, Superior Grains, Inc. ("Superior") filed a motion to vacate an arbitration award in favor of Palouse Empire Marketing, Inc. ("Palouse") concerning an arbitrated dispute between the two companies (doc. #1).  Superior argued one of the three arbitrators had an evident partiality and the award should be vacated under 9 U.S.C. § 10(a)(2).  After a hearing on many motions, this Court ordered Superior to appeal the arbitration panel's decision under the arbitration rules of the United States Pea & Lentil Trade Association ("USPLTA") (doc. #25).  Superior appealed, and the USPLTA Arbitration Appeal Committee ("Appeal Committee") affirmed the award of the arbitration panel.  Superior now renews its motion to vacate, contesting both the arbitrator's partiality and the Appeal Committee's reasoning in affirming the arbitration panel's award (doc. #38).  Because the challenged arbitrator was evidently partial, Superior's motion is **GRANTED**, and the arbitration award is **VACATED**.

1

**I.   Facts**[1]

In late 2005 or early 2006, Superior entered into a contract with Palouse under which Palouse would purchase a large amount of split peas and lentils from Superior.  After a dispute arose concerning the split pea contract, Palouse sought another supplier of both the split peas and lentils.  Palouse contracted with Premier Pulses ("Premier") to supply the lentils.  Premier then subcontracted with Agricore United ("Agricore") to supply approximately one-third of the lentils (doc. #20-2).  Superior had no knowledge of this subcontract arrangement.  Neither party disputes that Palouse and Agricore had no direct contractual relationship.

Superior and Palouse were members of the USPLTA, so they agreed to arbitrate their dispute under the USPLTA Arbitration Rules (cited as "Arbit. Rule") (doc. #13, Attachment 2).  Under those rules, each party chose one arbitrator, and these two arbitrators chose a third arbitrator as chairperson of the Arbitration Committee.  Arbit. Rule 2(a).  Arbitration Rule 2(d) governs impartiality of arbitrators:

> An arbitrator may be either a member or a nonmember of the USPLTA but must be <u>completely impartial and disinterested, commercially and otherwise</u>, in the particular dispute presented, and must be prominent in his/her field and experienced in the general area of the matter to be considered.  The

---

[1] Because the only issue the Court may address is the partiality of the arbitrator, the Court discusses only those facts necessary to give background for the arbitration issue. The Court expresses no opinion on the underlying dispute. That is for a neutral arbitration panel to decide.

>appointment of each arbitrator shall be subject to approval of the Chairman of the USPLTA at his/her own discretion, the Chairman of the USPLTA also may remove any arbitrator for just cause or may appoint a replacement for any arbitrator who, for any reason or at any time, may be unable to serve [emphasis added].

Superior chose Larry White, and Palouse chose Dirk Boettcher. White and Boettcher chose Paul Lambert as the third arbitrator and chairman of the Arbitration Committee. Gary Johnson is chairman of the USPLTA and also the president of Premier. Under his authority as chair of the USPLTA, he approved the Arbitration Committee.

The arbitration issue before the Court arose because Boettcher, as an employee of Agricore, was involved in the lentil transaction. During the Arbitration Committee's post-argument deliberations, Boettcher informed the other arbitrators that his company supplied replacement lentils to Premier and that Agricore had profited from the transaction. Boettcher also signed part of the subcontract with Premier. Agricore's involvement in the lentil transaction was not disclosed to Superior prior to the arbitration. Palouse learned of the subcontract with Agricore after the lentils were shipped but before the arbitration (doc. #20-2). White testified he was concerned Boettcher should not be serving as an arbitrator because White did not believe Boettcher could remain impartial. The Arbitration Committee found in favor of Palouse and ordered Superior to pay Palouse $90,656.60.

After the deliberations, White inadvertently met Superior's president Les Knudson and Superior's attorney at the airport.

3

White informed them of Boettcher's involvement in the lentil transaction. After Superior learned of Boettcher's involvement in the lentil contract, it objected to his presence as an arbitrator to the USPLTA (doc. #1-3). Ultimately, the USPLTA informally upheld the Arbitration Committee's decision. Superior then filed its motion to vacate the award (doc. #1).

Palouse objected to the motion, arguing Superior should be required to exhaust his arbitration remedies by appealing the Arbitration Committee's decision to the formal Appeal Committee. The Court agreed and allowed Superior to appeal.

USPLTA Arbitration Rule 4(e)(3) governs objections to arbitrators:

> [Arbitration] awards or decisions shall not be questioned or invalidated on the grounds of any irregularity in the election or appointment of either Committee, or of any member of either Committee on the grounds that such member was ineligible or unqualified to serve, unless objection is made in writing and established to the satisfaction of the Chief Executive Officer of the USPLTA <u>before</u> the arbitration has commenced [emphasis added][.]

The Appeal Committee concluded the Arbitration Committee's decision should be affirmed because (1) Superior did not object to Boettcher's involvement prior to the arbitration hearing, (2) Superior could not estop Palouse from relying on Rule 4(e)(3) under Idaho's law of equitable estoppel because Superior had failed to prove Palouse intended it to rely on Palouse's concealment of Boettcher's involvement, and (3) Boettcher's involvement was harmless because the Arbitration Committee's

decision was unanimous and no damages were awarded on the lentil contract.

Superior now renews its motion to vacate the arbitration award. Superior argues that Boettcher was partial under 9 U.S.C. § 10(a)(2) and that the Appeal Committee's decision should not be given any merit because equitable estoppel does not apply and Boettcher's involvement could not have been harmless. Palouse objects, arguing that Boettcher is not partial under 9 U.S.C. § 10(a)(2) and that if he was, his presence on the arbitration panel was harmless.

## II. Discussion

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et. seq., provides a means for parties engaged in interstate commerce to arbitrate their disputes. Section 10(a) defines the court's limits in interfering with an arbitration award:

> In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration–
>
> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

In Commonwealth Coatings Corp. v. Continental Casualty Co., the United States Supreme Court held that partiality of an arbitrator is a serious concern under the FAA and that an arbitrator must disclose any business interest it has in a dispute. 393 U.S. 145, 149 (1968). In describing the scope of its holding, the Supreme Court concluded an arbitrator must disclose any interests that "might create an impression of possible bias." Id. Justice White, in his concurrence, argued an arbitrator cannot be expected to give parties a completely accurate "business biography." Id. at 151. He clarified the Court's holding by stating, "where the arbitrator has a substantial interest in a firm which has done more than trivial business with a party, that fact must be disclosed." Id. at 151-52.

The two opinions of Commonwealth Coatings seem to create two different standards for courts to apply: the impression of bias standard and the substantial interest standard. See Olson v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 51 F.3d 157, 159 (8th Cir. 1995) ("Because the concurring opinion presents an arguably narrower standard and the votes of concurring Justices White and Marshall were needed to create a majority, there is some uncertainty among the courts of appeals about the holding of Commonwealth Coatings.") The Olson court applied both tests and held the arbitrator was partial under either. Id.

In Montez v. Prudential Securities, Inc., the Eighth Circuit seemed to apply the narrower substantial-interest standard. 260

6

F.3d 980, 984 (8th Cir. 2001). The court looked to the challenged arbitrator's financial interest in his firm and the lack of business dealings with a party. Id. However, the court concluded "the district court did not err in holding that, under any of the standards articulated by the federal courts, 'evident partiality' cannot be found under the present circumstances." Id. (emphasis added).

The Eighth Circuit has further clarified the partiality test for cases in which the parties select their own arbitrators. In Delta Mine Holding Co. v. AFC Coal Properties, Inc., the court held that where the parties' arbitration agreement provides for selection of partial arbitrators, a party cannot claim evident partiality unless the party can prove the partial arbitrator prejudiced the arbitration award. 280 F.3d 815, 821-22 (8th Cir. 2001). The court compared this holding to Commonwealth Coatings:

> When a neutral arbitrator fails to disclose a relationship with one party that casts significant doubt on the arbitrator's impartiality, as in Commonwealth Coatings, it is appropriate to assume that the concealed partiality prejudicially tainted the award. But where the parties have expressly agreed to select partial party arbitrators, the award should be confirmed unless the objecting party proves that the party arbitrator's partiality prejudicially affected the award.

Id.; see also Winfrey v. Simmons Foods, Inc., 495 F.3d 549, 551 (8th Cir. 2007) ("Where an agreement entitles the parties to select interested arbitrators, 'evident partiality' cannot serve as a basis for vacating an award under § 10(a)(2) absent a showing of prejudice.").

7

In this case, while each party selected one arbitrator under the USPLTA Arbitration Rules, these arbitrators "must be completely impartial and disinterested, commercially and otherwise, in the particular dispute presented, . . ." Arbit. Rule 2(d).  Therefore, this case is different than <u>Delta Mine</u> or <u>Winfrey</u>.  While each party could select an arbitrator, the arbitrator could not be partial to the dispute as he or she could in those cases.  Furthermore, because all arbitrators were required to be neutral, the prejudice analysis of <u>Delta Mine</u> and <u>Winfrey</u> does not apply.  Therefore, Palouse's harmless error argument is without merit.  As the court said in Delta Mine, "it is appropriate to assume that the concealed partiality prejudicially tainted the award."  This Court concludes this rule applies even though no monetary award was given on the lentil contract because the taint is present regardless.  Agricore had profited from this dispute, so of course Boettcher would favor Palouse whether considering the split pea or lentil contract.  Therefore, to prevail on its motion, Superior needs to only meet the rule of <u>Commonwealth Coatings</u>.

   Boettcher and Agricore arguably do not meet the standard Justice White discussed in his concurrence.  Boettcher does not own a substantial interest in Agricore.  Furthermore, Palouse and Agricore have never directly conducted business together.  However, this case presents an issue the Eighth Circuit cases did not.  The conflict was directly related to the transactions in question.  This fact was significant to the <u>Commonwealth Coatings</u>

8

Court: "the relationship even went so far as to include the rendering of services on the very projects involved in this lawsuit." 393 U.S. at 146. This fact was also important to the Appeal Committee: "It would appear that Boettcher's company's involvement in providing the replacement lentils should have disqualified him from service pursuant to . . . Arbitration Rule 2(d)." (doc. #41-3).[2] Arbitration Rule 2(d) directly addresses this conflict also, stating that people commercially interested in the dispute cannot serve as arbitrators. Agricore's and Boettcher's connection to the dispute creates such a strong impression of bias that any articulation of "evident partiality" is met.

Palouse argues that because the pulses industry is a small one, it would be difficult to find arbitrators with which neither had conducted business or did not know through the industry. As an example, Palouse notes Superior's relationship with White. If Boettcher's and Agricore's relationship with Premier and Palouse had been more general, as White's is with Superior, his connection would not have been objectionable. However, his relationship was directly related to the dispute being

---

[2] The Court also takes issue with the Appeal Committee's analysis of this case. While the Court does not disagree that equitable estoppel applies to concealment as well as affirmative statements, under Commonwealth Coatings the duty to speak was with Boettcher, not Palouse. Palouse's intent in not disclosing this information was irrelevant. Using Arbitration Rule 4(e)(3) to bar Superior from raising a conflict it had no notice of before the arbitration does not ensure equity, it defeats it.

9

arbitrated.  The quality of this relationship prohibits him from serving as an arbitrator.

The Court emphasizes that it does not believe Palouse or Boettcher had any ill will or conspiratorial mind.  However, Boettcher was still partial to rule in Palouse's favor.  Under § 10(a)(2) and <u>Commonwealth Coatings</u>, Superior has the right to present its case to an impartial arbitration panel.

### III. Conclusion

Superior's Motions to Vacate (docs. #1 and #38) are **GRANTED**. The USPLTA Arbitration Committee's award is vacated and all funds that the parties have exchanged should be returned to the original party.  The Court again expresses no opinion on the merits of the contract dispute between the parties.  That issue should be re-arbitrated before an impartial panel.

**IT IS SO ORDERED.**

Dated this 11th day of January, 2008.

RODNEY S. WEBB, District Judge
United States District Court

10